UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00130-TBR

MALISA BRAXTON, *et al.*                                                Plaintiffs

v.

O'CHARLEY'S RESTAURANT PROPERTIES, LLC             Defendant

**MEMORANDUM OPINION**

This matter is before the Court upon Defendant O'Charley's Restaurant Properties, LLC's "Motion to Dismiss and Petition to Compel Arbitration and Stay Proceedings." (Docket No. 4.) Plaintiffs Malisa Braxton, Darla Bailey, and Lisa Colburn have responded, (Docket No. 8), Defendant has replied, (Docket No. 9), and Plaintiffs have filed their Surreply,[1] (Docket No. 10). This matter now is ripe for adjudication. For the reasons that follow, Defendant's Motion to Dismiss will be GRANTED.

BACKGROUND

Plaintiffs are all former employees of Defendant, O'Charley's Restaurant Properties, LLC (O'Charley's), who worked at the O'Charley's restaurant on Fort Campbell Boulevard in Hopkinsville, Kentucky. Plaintiffs allege they each were wrongfully terminated by O'Charley's for asserting their rights to worker's

---

[1] Joint Local Rule 7.1 does not provide for the filing of a surreply, and, as a matter of practice, parties who wish to file a surreply generally seek leave of Court to do so. *Honaker v. Innova, Inc.*, 2007 WL 1217742, at *1 (W.D. Ky. Apr. 23, 2007). No such request was filed in this case. Nonetheless, Defendant has filed no objection, and the Court, in its discretion, will consider Plaintiffs' Surreply.

compensation benefits.[2] Plaintiffs originally filed suit in Christian Circuit Court on July 9, 2013, (Docket No. 1-1), and O'Charley's timely removed Plaintiffs' lawsuit to this Court on August 9, 2013, (Docket No. 1).

At the time each of the Plaintiffs was hired, O'Charley's had in place an arbitration agreement. That agreement provides that claims arising out of an employee's employment with O'Charley's or the termination of employment must be submitted to a neutral arbitrator for a final and binding determination. (Docket No. 4-1, at 3-4.) O'Charley's has submitted sworn declarations by Alan Parrino, O'Charley's regional human resources manager, (Docket No. 4-1), and by Doris Meador, a human resources information systems analyst for O'Charley's, (Docket No. 4-2). Parrino states that all O'Charley's employees are required to execute the arbitration agreement as a condition of their employment and are not permitted to continue with O'Charley's new-hire orientation program until they express their consent to the terms of that agreement. (Docket No. 4-1, at 1-2.) Parrino further states that all hourly employees are provided a copy of O'Charley's "Hourly Policy and Procedures Handbook" (Handbook), which reflects that employees are required to execute an arbitration agreement as a condition of employment. (Docket No. 9-1, at 1.) Under the heading "Mediation & Arbitration," that Handbook specifically states: "As a condition of employment, all team members must sign an Arbitration Agreement." (Docket No. 9-1, at 6.) Meador similarly avers that all new hires are required to review various employment-related documents,

---

[2] Although Plaintiffs state in their Response that they "were terminated from their employment with O'Charley's following claims for worker's compensation," (Docket No. 8-1, at 1), their Complaint mentions only that Plaintiff Bailey "was fired from her employment" and that Plaintiffs Braxton's and Colburn's "hours were cut," (Docket No. 1-1, at 9-11).

including the arbitration agreement, and are not permitted to continue with orientation until they consent to the terms of the arbitration agreement. (Docket No. 4-2, at 2.) Upon hire, each new employee is set up in O'Charley's "human resources information system" with a unique employee identification number and a unique password consisting of a combination of parts of the employee's social security number and last name. (Docket No. 4-2, at 2.) The new hire's review of these employment-related documents is done electronically through O'Charley's human resources information system, and the new hire electronically expresses his or her consent to the arbitration agreement by clicking a button stating "I Agree" to the terms of that agreement. (Docket No. 4-1, at 2.) According to Meador, the employee's only choice is to click "I Agree" or exit the program. (Docket No. 4-2, at 2.) Once an employee clicks "I Agree," an electronic signature is captured as a record of the employee's consent to the agreement. (Docket No. 4-2, at 2.) In conjunction with Meador's declaration, O'Charley's has submitted computer printouts indicating that each Plaintiff electronically signed the arbitration agreement along with various other employment documents, such as direct-deposit forms and W-4 tax forms. (*See* Docket Nos. 4-2, at 7-13.) These printouts also reflect that each Plaintiff received and consented to the terms of the Handbook. (*See* Docket No. 4-2, at 9, 11, 13.)

Plaintiffs each have submitted sworn affidavits denying that they signed any arbitration agreement with O'Charley's, electronically or otherwise. (Docket Nos. 8-2, at 1; 8-3, at 1; 8-4, at 1). By way of argument, Plaintiffs further insist that they were unaware of the arbitration agreement and, at least implicitly, seem to maintain that they

were never informed that their continued employment bound them to arbitration. (Docket No. 10, at 3.)

## DISCUSSION

O'Charley's moves the Court to dismiss this action under Fed. R. Civ. P. 12 or, in the alternative, to compel arbitration and stay these proceedings pending the outcome of such arbitration pursuant to 9 U.S.C. §§ 3–4. Thus, the principal issue that must be resolved is whether the arbitration agreement at issue is enforceable against the Plaintiffs.

Congress enacted the United States Arbitration Act of 1925, more commonly referred to as the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, in response to the common law hostility toward arbitration and the refusal of many courts to enforce arbitration agreements. The United States Supreme Court has since interpreted the FAA as codifying "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). The Supreme Court has further stated that the FAA's underlying purpose is to put arbitration agreements "upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA establishes a procedural framework applicable in both federal and state courts, and also mandates that substantive federal arbitration law be applied in both. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

Whereas § 2 of the FAA mandates enforcement, § 3 permits a party seeking to enforce an arbitration agreement to request that litigation be stayed until the terms of the

arbitration agreement have been fulfilled. 9 U.S.C. §§ 2–3. Section 4 goes on to provide the mechanism by which a party may petition a court to compel arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

*Id.* § 4. Thus, before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Such review, the Sixth Circuit advises, requires the Court to determine first whether "a valid agreement to arbitrate exists between the parties," and second whether "the specific dispute falls within the substantive scope of the agreement." *Id.* (quoting *Javitch*, 315 F.3d at 624). Plaintiffs do not appear to argue that their claims fall outside the scope of the arbitration agreement; rather, at issue here is whether a valid and enforceable arbitration agreement exists between Plaintiffs and O'Charley's.

Plaintiffs unequivocally deny entering into any arbitration agreement with O'Charley's and insist that no such agreement ever was made. Because the formation of the arbitration agreement is at issue, Plaintiffs urge that the issue of arbitration must be determined by a jury. (*See* Docket No. 8-1, at 4-5.) Accordingly, the Court must

determine whether Plaintiffs and O'Charley's actually agreed to arbitrate their disputes via the arbitration agreement. "Because arbitration agreements are fundamentally contracts," the Court must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). In Kentucky, as in all jurisdictions, a contract is only enforceable if both parties agree to be bound by it. *See, e.g.*, *David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 391 (Ky. 1976). Contracting parties typically manifest their agreement by signing the contract; however, "Kentucky courts will also enforce unsigned arbitration agreements where the parties have indicated acceptance of the contract through their actions." *Polly v. Affiliated Computer Servs., Inc.*, 2011 WL 93715, at *2 (E.D. Ky. Jan. 11, 2011) (citing *Sweeney v. Theobald*, 128 S.W.3d 498, 501 (Ky. Ct. App. 2004)); *see also Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 362-63 (Ky. 2005) (discussing how an employer's offer for a unilateral contract, which was embodied in a written personnel policy, can become binding "once it is accepted by the employee through his continuing to work." (citations omitted)). This is consistent both with the text of § 2 of the FAA, which requires only that arbitration agreements be in writing, and with the approach taken by the Sixth Circuit and other circuit courts. *See Seawright*, 507 F.3d at 978 ("[A]rbitration agreements under the FAA need to be written, but not necessarily *signed*."); *accord Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) ("We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement."); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) ("Although § 3 of the FAA

requires arbitration agreements to be written, it does not require them to be signed.");
*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2nd Cir. 1987) ("[W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties.")

Here, O'Charley's has come forward with some evidence showing that Plaintiffs each agreed to the arbitration agreement: Parrino's and Meador's affidavits, which state that new employees are required to electronically sign the arbitration agreement in order to continue with the orientation program; Meador's affidavit, which explains how new employees are assigned unique employee identification numbers and passwords, and the process by which new employees electronically review and sign the arbitration agreement; computer printouts reflecting that each of the Plaintiffs signed the arbitration agreement with her unique password; and computer printouts indicating that each Plaintiff received the Handbook, which also advised employees about the arbitration agreement. Nonetheless, each Plaintiff firmly maintains that she never signed any arbitration agreement relating to her employment at O'Charley's. Plaintiffs also have submitted the affidavit of Stevie Taylor, another former O'Charley's employee, in which Taylor states that, like the Plaintiffs, she never signed any arbitration agreement with O'Charley's. (Docket No. 8-5, at 1.)

Before compelling arbitration, the Court must "be[] satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4. "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simmons*, 288 F.3d 878, 889 (6th Cir. 2002). That is, she must come forward with sufficient evidence that, when viewed in the light most favorable to her,

would permit "a reasonable finder of fact [to] conclude that no valid agreement to arbitrate exists." *Id.* The Sixth Circuit addressed this very question in *Mazera v. Varsity Ford Management Services, LLC*, and, in dicta, quoted approvingly the Third Circuit's position that "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits . . . should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds." 565 F.3d 997, 1001 (6th Cir. 2009) (alteration in original) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)). In the present case, and in spite of the compelling evidence produced by O'Charley's, the Plaintiffs' unequivocal denials that they signed the arbitration agreement would appear to satisfy this showing by raising a genuine issue of material fact whether an agreement was, in fact, made.

However, even assuming that Plaintiffs did not electronically sign the arbitration agreement, they each manifested their assent to that agreement in other ways. As noted above, under Kentucky law, a party can be bound to a contract, even in the absence of a signature, when her actions indicate acceptance of the contract's terms. *See, e.g.*, *Polly*, 2011 WL 93715, at *2; *Sweeney*, 128 S.W.3d at 501. The arbitration agreement at issue here opens with the statement: "In consideration of O'Charley's Inc. providing Employee with an application for employment, or an offer of employment or *further employment by O'Charley's Inc.*, and the compensation and job benefits that Employee has and/or will receive from O'Charley's Inc., . . . and the mutual promises made by Employee and O'Charley's Inc. herein, the undersigned Employee hereby agrees to the following . . . ." (Docket No. 4-1, at 3 (emphasis added).) The language "further employment" in the arbitration agreement here is akin to the "continued employment"

language in the arbitration agreements in *Seawright v. American General Financial Services, Inc.*, 507 F.3d at 972-74, and *Polly v. Affiliated Computer Services, Inc.*, 2011 WL 93715, at *3-4, in which the Sixth Circuit and the Eastern District of Kentucky, respectively, concluded that although the plaintiff had not formally signed the arbitration agreement, her continued employment constituted her assent to the agreement's terms.[3] Moreover, while Plaintiffs adamantly deny signing the arbitration agreement, they do not deny that they reviewed it or were aware of its terms.[4] (*See* Docket Nos. 8-2, at 1; 8-3, at 1; 8-4, at 1.) Nor do they deny or dispute that they received a copy of the Handbook, which expressly states: "As a condition of employment, all team members must sign the Arbitration Agreement." (*See* Docket Nos. 8-2, at 1; 8-3, at 1; 8-4, at 1; 9-1, at 6.) Furthermore, despite its limited relevance to whether Plaintiffs assented to the arbitration agreement, *see Polly*, 2011 WL 93715, at *4, Taylor, the other former O'Charley's employee, similarly does not deny reviewing or being aware of the arbitration agreement, nor does she deny having received a copy of the Handbook. (*See* Docket No. 8-5, at 1.)

The Sixth Circuit and Eastern District of Kentucky have held that an employee assented to an arbitration agreement, even without a signature, in circumstances similar to those here. *See Seawright*, 507 F.3d at 972-74, 978-79; *Polly*, 2011 WL 93715, at *4.

---

[3] Although *Seawright* dealt with whether, in absence of a signature, continuing employment constituted assent under Tennessee law, *see* 507 F.3d at 973, as the Eastern District of Kentucky observed in *Polly*, "Tennessee law . . . like Kentucky law, recognizes that action in conformity with a contract can constitute assent to the contract," 2011 WL 93715, at *2.

[4] By way of argument, in their Surreply, Plaintiffs state that they were not aware of the existence of the arbitration agreement. (Docket No. 10, at 3.) However, this assertion is not supported by their affidavits, in which each Plaintiff merely states that she did not *sign* any such agreement. (*See* Docket Nos. 8-2, at 1; 8-3, at 1; 8-4, at 1.)

O'Charley's has produced sufficient evidence that Plaintiffs were informed of the arbitration agreement, were allowed an opportunity to review it, and were informed that they must agree to its terms as a condition of their employment. The arbitration agreement, which Plaintiffs do not deny reviewing or being aware of, clearly states that each employee must agree to its terms "[i]n consideration of . . . an application for employment, or an offer of employment or further employment by O'Charley's Inc., and the compensation and job benefits that [she] has and/or will receive from O'Charley's Inc." (Docket No. 4-1, at 3.) The Handbook, which Plaintiffs also do not deny receiving or being aware of, similarly highlights, in no uncertain terms, that "[a]s a condition of employment, all team members must sign the Arbitration Agreement." (Docket No. 9-1, at 6.) It is not disputed that Plaintiffs continued their employment at O'Charley's or that they continued to receive compensation and/or other benefits from O'Charley's.[5]

Accordingly, the Court finds that the Plaintiffs' actions constituted assent to the arbitration agreement and its mandatory arbitration requirement. The Court further finds that the arbitration agreement is valid and enforceable under the FAA, regardless whether it was ever signed by Plaintiffs. *See Seawright*, 507 F.3d at 978. As such, to the extent Plaintiffs wish to pursue their claims against O'Charley's, they must do so in accordance with that agreement.

---

[5] According to their Complaint, Plaintiff Braxton continued her employment with O'Charley's for "seven years" and Plaintiff Bailey for continued hers for "over two years." (Docket No. 1-1, at 9-10.) The Complaint also states that Plaintiff Colburn was injured while working at O'Charley's in March 2013, (Docket No. 1-1, at 11), which, taken with the evidence of record showing that she was hired in August 2009, (Docket No. 4-2, at 2, 13), means that Plaintiff Colburn continued her employment with O'Charley's for at least three-and-a-half years.

A final consideration is whether the Court should dismiss this action or, instead, stay these proceedings pending arbitration. Several circuit courts, focusing on the language of § 3 of the FAA, have held that it is proper for a court to retain jurisdiction by staying the pending litigation until the arbitration is concluded. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3d Cir. 2004); *Adair Bus. Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953 (10th Cir. 1994). However, other circuit courts, focusing instead on the underlying policies set forth by the Supreme Court and Congress, have held that a court may dismiss the action before it if all the claims in the suit will be referred to arbitration. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988). The Sixth Circuit appears to follow the latter approach. *Ozormoor v. T-Mobile USA, Inc.*, 345 F. App'x 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument."); *Hensel v. Cargill, Inc.*, 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) (unpublished table decision) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed."); *see also Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford*, 975 F.2d at 1164, for the proposition that "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration"). Numerous district courts in this circuit, relying on *Ozormoor*, have dismissed actions where all claims are subject to arbitration.

*E.g.*, *Cox v. Gen. Elec. Co.*, 2013 WL 3811762, at *4 (S.D. Ohio July 22, 2013); *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 865 (N.D. Ohio 2013); *Braverman Props., LLC v. Boston Pizza Rests., LP*, 2011 WL 2551189, at *4 (W.D. Mich. June 27, 2011). Here, Plaintiffs do not argue that their claims fall outside the substantive scope of the arbitration agreement. Therefore, because the Court is satisfied that all of the Plaintiffs' claims are subject to arbitration, it will dismiss this action, rather than stay these proceedings pending arbitration.

## CONCLUSION

Having considered the parties' respective arguments and being otherwise sufficiently advised, for the foregoing reasons, the Court will GRANT O'Charley's Motion to Dismiss and DISMISS Plaintiffs' Complaint. Because O'Charley's has moved to compel arbitration only if this matter is stayed, the Court finds no reason to necessarily compel arbitration at this time; however, should Plaintiffs wish to pursue their claims further, they must do so through arbitration in accordance with the terms of the arbitration agreement. An appropriate Order shall issue concurrently with this Opinion.

Date:

cc: Counsel